IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| **HENRY DESMARAIS**, individually, and on behalf of all others similarly situated, | CIVIL ACTION |
| | |
| Plaintiffs, | No.: |
| | Hon. |
| v. | |
| | |
| **OCEAN SPRAY CRANBERRIES, INC.**, | |
| | |
| Defendant. | |

## COLLECTIVE AND CLASS ACTION
## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Henry Desmarais ("Plaintiff"), individually and on behalf of all similarly situated production workers[1] (Plaintiff along with the putative members of the FLSA Collective and Rule 23 Classes are hereinafter referred to as "Plaintiffs"), by and through his undersigned attorneys, hereby brings this Collective and Class Action Complaint against Defendant, Ocean Spray Cranberries, Inc. ("Defendant"), and alleges as follows:

## INTRODUCTION

1.    This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated production workers employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Massachusetts Overtime Act, M.G.L. ch. 151 §1A, and the Massachusetts Wage Act, M.G.L. ch. 149 §148, and common law.

2.    Defendant is a global producer, manufacturer, supplier, and distributor of fruit ingredient products, namely, cranberries, to over 100 countries worldwide.[2] Defendant offers a

---

[1] The phrase "production workers" is defined in paragraph 14.
[2] https://www.oceanspray.com/Ingredients (last visited November 8, 2022); https://oceanspray.wd5.myworkdayjobs.com/OceanSprayJobs (last visited November 8, 2022).

1

wide range of products including dried cranberries, frozen fruit, puree, and concentrate.[3]

3.     Defendant employs and employed hourly production workers, including Plaintiffs, to facilitate its operations.

4.     Plaintiffs are and were employed in Defendant's manufacturing facilities in Middleboro, Massachusetts; Lehigh Valley, Pennsylvania; Henderson, Nevada; Kenosha, Wisconsin; Aberdeen, Washington; Sulphur Springs, Texas; Tomah, Wisconsin; and Wisconsin Rapids, Wisconsin.[4]

5.     Due to "food and personal safety purposes," Defendant required Plaintiffs to wear company-issued uniforms, protective clothing, and safety gear during their work shifts in order to "[p]rocess and package our products in ways that protect the health and safety of our growers, employees, neighbors, consumers and the environment." (*See* **Exhibit A**, Ocean Spray Middleborough Manufacturing Facility Program and Policy Book, pgs. 54-62).

6.     The company-issued protective clothing and safety gear included "smocks or flame resistant (FR) clothing," "[s]afety shoes or boots," which "include a steel (or equivalent) toe box," "non-prescription safety glasses," "eyewear retainers," "safety goggles," "face shield(s)," and "hairnets, " as well as a hardhat and hearing protection (hereinafter referred to as "personal protective equipment" or "PPE"). (*See* **Exhibit A**, Ocean Spray Middleborough Manufacturing Facility Program and Policy Book, pgs. 7, 54-62).

7.     Defendant required Plaintiffs to change into ("don") and change out of ("doff") the PPE before and after their work shifts in designated locations at Defendant's manufacturing facilities.

---

[3] https://www.oceanspray.com/Ingredients (last visited November 8, 2022).
[4] https://www.oceanspray.com/Contact-Us (last visited November 8, 2022).

8.      The process of donning and doffing the PPE was compensable because Defendant required Plaintiffs to wear the PPE during their work shifts and to don and doff the PPE at the worksite. (*See* **Exhibit A**, Ocean Spray Middleborough Manufacturing Facility Program and Policy Book, pgs. 7, 54-62).

9.      Additionally, the PPE was an integral and indispensable part of Plaintiffs' principal work activities, as Plaintiffs could not safely perform their production activities without wearing the PPE.

10.     Plaintiffs spent substantial amounts of time each day donning and doffing PPE before and after their work shifts.

11.     Defendant, however, did not pay Plaintiffs for all of this time. Instead, Defendant paid Plaintiffs based on their *scheduled* shift start times and end times (e.g. 6:00 p.m. to 6:00 a.m.), not the time that Plaintiffs performed their first and last principal activities of the workday.

12.     Consequently, Defendant did not pay Plaintiffs for all compensable time, including overtime.

13.     Defendant required Plaintiffs to don and doff the same or substantially similar PPE; and Defendant compensated Plaintiffs in the same manner.

14.     The individuals Plaintiff seeks to represent in this action are current and former production employees who work(ed) for Defendant at one or more of its manufacturing facilities and who are/were required to don and doff protective clothing and safety gear before the start of and/or after the end of their work shifts. Production employee positions at Defendant's manufacturing facilities include, but are not limited to, employees holding the following positions: General Purpose employees, Repair Laborers, Entry Level Operators, Fork Lift Operators, Machine Operators, Production Resource Team Members, Machinists/Mechanics, Operations

Supervisors, Maintenance Supervisors, Performance Supervisors, Operations Interns, Sanitation Technicians,  Production Technicians, Seasonal Workers, Food and Safety Quality Technicians, and Upgrade Crew members.

15.     Defendant knew or could have easily determined how long it took Plaintiffs to complete their donning and doffing, and Defendant could have properly compensated Plaintiffs for this pre- and post-shift work, but deliberately chose not to.

16.     In addition to the Plaintiffs' uncompensated off-the-clock work, Defendant failed to compensate all of its production employees at the appropriate overtime rate using the FLSA's, as well as the Massachusetts Overtime Act's, "regular rate" calculation. More specifically, Defendant failed to include shift premiums, bonuses, or other remuneration paid to its production employees in calculating their correct overtime premiums as required by the FLSA and the Massachusetts Overtime Act. 29 C.F.R. §§ 778.108-109; M.G.L. ch. 151 §1A; 454 Mass. Code Regs. 27.02. Instead, Defendant only paid Plaintiffs an overtime premium calculated from their base hourly rates.

17.      Defendant's practice of failing to compensate Plaintiffs for all hours worked, and failing to compensate Plaintiffs at the appropriate overtime rate, violated the production workers' rights under the FLSA.

18.     Defendant is liable for its failure to pay its production employees for all work performed, and at the appropriate overtime rate for hours worked in excess of 40 per week.

19.     Employees who elect to participate in this FLSA collective action seek compensation for all off-the-clock, pre-shift work performed for Defendant, and compensation at the appropriate overtime rate for all hours worked in excess of 40 per week, an equal amount for

liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

20.     Plaintiff seeks a declaration that his rights, and the rights of the putative collective/class members were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

21.     This Court has subject matter jurisdiction over Plaintiff's FLSA claim under 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201 *et seq*.

22.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim under 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

23.     Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiff, engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

24.     This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because the state law claims and the federal claim are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

25.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

26.     This Court has personal and general jurisdiction over Defendant because it

maintains its principal place of business in Massachusetts. *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84 (1st Cir. 2022), cert. denied, 142 S. Ct. 2777 (2022).

## VENUE

27.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) and (c) and L.R. 40.1 (c) because Defendant conducts business in, and is headquartered in, this District and division, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District and division.

28.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

29.     Plaintiff HENRY DESMARAIS is a Massachusetts resident who worked for Defendant as an hourly production employee at Defendant's Middleboro, Massachusetts manufacturing facility from November 2021 to August 2022. Defendant most recently paid Plaintiff $21.27 per hour, plus shift premium pay. *See* **Exhibit B**, Plaintiff's August 5, 2022 Earnings Statement. Throughout his employment with Defendant, Plaintiff typically worked up to 40 or more hours per week and has worked overtime during numerous workweeks. Plaintiff signed a consent form to join this collective action lawsuit. **Exhibit C**.

30.     Plaintiff submitted a wage complaint to the Massachusetts Attorney General's Office on October 19, 2022 and received authorization to file suit on October 20, 2022. **Exhibit D**.

31.     Additional putative Collective and Class Members were or are employed by Defendant as production employees in Massachusetts, Pennsylvania, Nevada, Texas, Washington,

Wisconsin, and potentially other states during the past three years, and their consent forms will also be filed in this case.

32.     Defendant Ocean Spray Cranberries, Inc. is a Delaware corporation with its principal executive office located at 1 Ocean Spray Drive, Lakeville-Middleboro, Massachusetts 02349. Its registered agent for service of process is Joseph L. Harrington, III at 1 Ocean Spray Drive, Lakeville-Middleboro, Massachusetts 02349.

## GENERAL ALLEGATIONS

### A.     Defendant's Operations and Manufacturing Facilities

33.     Defendant is a global producer, manufacturer, supplier, and distributor of fruit ingredient products, namely, cranberries, to over 100 countries worldwide.[5] Ocean Spray offers a wide range of products including dried cranberries, frozen fruit, puree, and concentrate.[6]

34.     Defendant employs or employed hourly production employees, including Plaintiffs, to facilitate its operations.

35.     Plaintiffs are and were employed as production workers at Defendant's manufacturing facilities located in Middleboro, Massachusetts;  Lehigh Valley, Pennsylvania; Henderson, Nevada; Kenosha, Wisconsin;  Aberdeen, Washington; Sulphur Springs, Texas; Tomah, Wisconsin; and Wisconsin Rapids, Wisconsin.[7]

### B.     Defendant Required Plaintiffs to Utilize Company-Issued PPE during their Work Shifts for Personal Safety

36.     Due to "food and personal safety purposes," Defendant required Plaintiffs to wear company-issued uniforms, protective clothing, and safety gear during their work shifts in order

---

[5] https://www.oceanspray.com/Ingredients (last visited November 8, 2022); https://oceanspray.wd5.myworkdayjobs.com/OceanSprayJobs (last visited November 8, 2022).
[6] https://www.oceanspray.com/Ingredients (last visited November 8, 2022).
[7] https://www.oceanspray.com/Contact-Us (last visited November 8, 2022).

"[p]rocess and package our products in ways that protect the health and safety of our growers, employees, neighbors, consumers and the environment." (*See* **Exhibit A**, Ocean Spray Middleborough Manufacturing Facility Program and Policy Book, pgs. 54-62).

37.     The company-issued protective clothing and safety gear included "smocks or flame resistant (FR) clothing," "[s]afety shoes or boots," which "include a steel (or equivalent) toe box," "non-prescription safety glasses," "eyewear retainers," "safety goggles," "face shield(s)," and "hairnets, " as well as a hardhat and hearing protection (hereinafter referred to as "personal protective equipment" or "PPE"). (*See* **Exhibit A**, Ocean Spray Middleborough Manufacturing Facility Program and Policy Book, pgs. 7, 54-62).

38.     Defendant required Plaintiffs to don and doff the PPE before and after their work shifts in designated locations at Defendant's manufacturing facilities.

39.     Defendant prohibited Plaintiffs from donning or doffing the PPE at home.

40.     Defendant prohibited Plaintiffs from taking the PPE home with them or otherwise removing the PPE from Defendant's manufacturing facilities. *See* **Ex. A**, Ocean Spray Middleborough Manufacturing Facility Program and Policy Book, pgs. 7, 54 ("The Company will supply and maintain (including laundering and mending) any uniforms, currently smocks or flame resistant (FR) clothing, to be worn when entering the production area") ("Soiled uniforms, aprons, or gloves must be returned to the designated areas for each individual plant").

41.     Defendant furnished Plaintiffs with freshly laundered protective clothing each workday. *Id.*

42.     Defendant prohibited Plaintiffs from leaving the locker room and walking to the production area without wearing their protective clothing and protective shoes/boots. *Id.* at pgs. 54-62.

43.     Defendant prohibited Plaintiffs from entering certain areas of the manufacturing facility, including the production area, without wearing the appropriate PPE. *Id.*

44.     Defendant prohibited Plaintiffs from leaving the production area and walking back to the locker room without wearing their protective clothing and protective shoes/boots. *Id.*

45.     Defendant prohibited Plaintiffs from leaving the manufacturing facility without doffing the PPE and changing into a clean pair of shoes.

46.     Plaintiffs spent substantial amounts of time each day donning and doffing PPE before and after their work shifts.

47.     Defendant, however, did not pay Plaintiffs for all of this time.

48.     Instead, Defendant paid Plaintiffs based on their *scheduled* shift start times and end times (e.g. 6:00 p.m. to 6:00 a.m.), not the time that Plaintiffs performed their first and last principal activities of the workday.

49.     Consequently, Defendant did not pay Plaintiffs for all compensable time, including overtime.

**C.     Pre-Shift Donning and Walking Activities**

50.     Before their scheduled shifts and before beginning their production activities, Plaintiffs were required to undertake the following essential work tasks in chronological order:

- Upon arriving at the facility, Plaintiffs were required to "badge-in" to the facility, swiping their security badge at the employee entrance before walking inside the building;

- Once inside the building, Plaintiffs proceeded to a reception area to have their temperature taken[8];

- After their temperatures were taken, Plaintiffs walked to a break room where they utilized Defendant's timekeeping system to "punch in." Once the employees were punched in, they proceeded to the locker room;

- After entering the locker room, Plaintiffs unlocked their combination lock on their personal

---

[8] This requirement was instituted in March 2020 as a result of the COVID-19 pandemic.

lockers.  Plaintiffs then removed their shoes, stowed their personal items in their locker, and put on and laced-up their required steel-toed safety shoes or boots;

- Plaintiffs kept their hard hats, hearing protection, and safety glasses and goggles inside their personal lockers. After lacing up their shoes or boots, Plaintiffs picked up all of this safety equipment, locked the combination lock on their personal locker, and proceeded to the hallway outside of the facility's production area;

- Once outside of the production area, Plaintiffs were required retrieve their company-issued beard and hairnets, as well as their pre-laundered work shirts, which the company kept in the hallway outside of the production area;

- Plaintiffs then donned their work shirts, hard hats, hearing protection, safety glasses and goggles, and beard and hairnets, and any other required safety equipment, in the hallway just outside of the production area;

- Just before entering the production area, Plaintiffs were required to utilize an industrial shoe/boot cleaner which cleaned and sterilized Plaintiffs' steel-toed shoes/boots. Once this process was completed, Plaintiffs entered the production area.

51.     The pre-shift donning and walking process took Plaintiffs substantial time on a daily basis, ranging from 8 to 10 minutes per shift, and happening before the beginning of their scheduled shift.

52.     Defendant, however, did not pay Plaintiffs for all of this time. Instead, Defendant paid Plaintiffs based on their *scheduled* shift start times and end times (e.g. 6:00 p.m. to 6:00 a.m.), not the time that Plaintiffs performed their first and last principal activities of the workday.

53.     Consequently, Plaintiffs performed pre-shift work in the range of 8 to 10 minutes per shift.

**D.    Defendant's Timekeeping System Failed to Properly Account for Plaintiffs' Donning and Walking Activities**

54.     During their shifts, Plaintiffs were required to enter their time into Defendant's time-keeping system using a computer terminal in the breakroom area, but again, this time was based on their *scheduled* shift start times and end times (e.g. 6:00 p.m. to 6:00 a.m.), not the time that Plaintiffs performed their first and last principal activities of the workday.

55.     Defendant required Plaintiffs to report to their work stations and begin their production activities at their scheduled shift start time (e.g., 6:00 p.m.).

56.     However, as described above, due to the extensive PPE donning and walking process, Plaintiffs spent 8-10 minutes per day prior to their scheduled shift start time to complete their PPE donning and walking activities and in order to be at their work station at the beginning of their shift.

57.     Consequently, Defendant's timekeeping system failed to account for all of the time Plaintiffs spent donning PPE.

**E.     Donning and Doffing PPE at the Worksite are Principal Work Activities and are Compensable under the FLSA**

58.     Defendant required Plaintiffs to wear the PPE during their work shifts in order to "[p]rocess and package our products in ways that protect the health and safety of our growers, employees, neighbors, consumers and the environment." (*See* **Exhibit A**, Ocean Spray Middleborough Manufacturing Facility Program and Policy Book, pgs. 54-62).

59.     Additionally, the PPE is an integral and indispensable part of Plaintiffs' principal work activities, as Plaintiffs could not safely perform their production activities without wearing the PPE.

60.     Donning and doffing protective clothing and safety gear are principal activities under the Portal-to-Portal Act, 29 U.S.C. § 254, and thus time spent in those activities, as well as any walking and waiting time that occurs after the employee engages in his first principal activity and before he finishes his last principal activity, is part of a "continuous workday" and is compensable under the FLSA.

61.     According to Massachusetts law, donning and doffing protective clothing and safety gear is compensable because it is "required to be [done] on the employer's premises…".

454 CMR 27.04.

62.    The determination of whether donning and doffing a safety uniform is compensable begins with *Steiner v. Mitchell*, 350 U.S. 247 (1956), the seminal case on the subject. In *Steiner*, the Supreme Court held that donning and doffing uniforms was compensable when employees handling dangerous chemicals in a wet storage battery factory were "compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities which state law requires their employer to provide." *Id*. at 248.

63.    The factory workers in *Steiner* were exposed to high levels of lead particles (dust and fumes), which "permeate[d] the entire plant and everything and everyone in it." *Id*. at 249. Lead dust attached to the skin, hair, clothing and shoes of the employees, and presented significant risks to family members of the workers because toxic particles could be "brought home in the workers' clothing or shoes." *Id*. at 250.

64.    Consequently, the workers were issued old but clean clothes on-site, and were required to don and doff the clothes at the factory and shower on the premises before leaving in order to minimize health risks to themselves and others. *Id*. at 255. Under these circumstances, the Court had "no difficulty" concluding that these dress-related activities were compensable under the FLSA. *Id*.

65.    Following the Supreme Court's decision in *Steiner*, the Department of Labor ("DOL") issued regulations providing further guidance about the types of dress-related activities that are compensable under the FLSA. One such regulation, 29 C.F.R. § 790.8(c), describes "principal activity" as follows:

> Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the

beginning and end of the workday would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a 'preliminary' or 'postliminary' activity rather than a principal part of the activity.

66.     More recently, in an advisory memorandum regarding the Supreme Court's decision in *IBP v. Alvarez*, 546 U.S. 21 (2005), the DOL reiterated its view that the FLSA requires compensation for donning and doffing safety gear when the donning and doffing activities must be performed at work. The DOL opined:

> Therefore, the time, no matter how minimal, that an employee is required to spend putting on and taking off gear on the employer's premises is compensable 'work' under the FLSA. … However, donning and doffing of required gear is within the continuous workday only when the employer or the nature of the job mandates that it take place on the employer's premises. It is our longstanding position that if employees have the option and the ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the [worksite].

Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006), available at *https://www.dol.gov/whd/FieldBulletins/AdvisoryMemo2006_2.htm#_ftnref2*.

67.     In light of the Supreme Court's opinion in *Steiner*, numerous Circuit Courts have endorsed the compensability of donning and doffing safety gear. For example, in *Tum v. Barber Foods, Inc.*, 360 F.3d 274, 278 (1st Cir. 2004), the First Circuit noted with approval the district court's opinion regarding the compensability of donning and doffing safety gear when wearing such gear is required by the employer and/or government regulation:

> The district court found that the donning and doffing of required gear is an integral and indispensable part of Employees' principal activities. *See generally Steiner v. Mitchell,* 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956) (holding that activities should be considered integral and indispensable when they are part of the principal activities for the particular job tasks); *Mitchell v. King Packing Co.,* 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282 (1956). We agree with the district court's conclusion as to the required gear. In the context of this case, Employees are required by Barber Foods and or government regulation to wear the gear. Therefore, these tasks are integral to the principal activity and therefore compensable. *See Alvarez v. IBP, Inc.,* 339 F.3d 894, 903 (9th Cir. 2003) (holding that donning and doffing which is

both required by law and done for the benefit of employer is integral and indispensable part of the workday); *cf.* 29 C.F.R. § 1910.132(a).

*Id.*

68.     In *Franklin v. Kellogg Co.,* 619 F.3d 604 (6th Cir. 2010), the Sixth Circuit considered the issue of employee compensation for time spent donning and doffing food protective clothing and safety gear at the beginning and the end of work shifts. The protective gear at issue included hair and beard nets, safety glasses, ear plugs, and "bump caps." *Id.* at 608. The Sixth Circuit applied the *Steiner* test, asking whether the activities of donning and doffing were an "integral and indispensable" part of the principal activity of the employment. *Id.* at 619-20. The Sixth Circuit answered this question in the affirmative, reasoning that the activities were required by the manufacturer, and ensured untainted products and safe and sanitary working conditions. *Id.* at 620.

69.     In a case involving the donning and doffing of protective gear at a meat processing plant, *Alvarez v. IBP, Inc.,* 339 F.3d 894 (9th Cir. 2003), *aff'd,* 546 U.S. 21 (2005), the Ninth Circuit also applied the *Steiner* test. The court considered whether these activities of donning and doffing at the beginning and end of a work shift were "integral and indispensable" to the principal activity of the employment, inquiring whether the activities were "necessary to the principal work performed and done for the benefit of the employer." *Id.* at 902-03. The Ninth Circuit concluded that the "integral and indispensable" test set forth in *Steiner* was satisfied with regard to the donning and doffing of all the protective gear at issue. *Id.* at 903.

**F.     Plaintiffs' Walking Time was Compensable Because it Occurred After the Beginning of the their First Principal Activity**

70.     The time spent by Plaintiffs walking to and from the locker room and production area was compensable because it occurred after donning their PPE.

71.     On appeal to the Supreme Court, the employers in *Alvarez* did not challenge the

Ninth Circuit's holding that, in light of *Steiner,* donning and doffing of protective equipment is compensable under the Portal Act. *Alvarez,* 546 U.S. at 32. Instead, the employers appealed a separate ruling regarding the compensability of walking time. *Id.* The Supreme Court held that walking time is compensable if it occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity. *Id.* at 37.

72.    In the wake of the Supreme Court's decision in *Alvarez*, the DOL issued an advisory memorandum stating, in pertinent part,

> The Supreme Court's unanimous decision in *Alvarez* holds that employees who work in meat and poultry processing plants must be paid for the time they spend walking between the place where they put on and take off protective equipment and the place where they process the meat or poultry. The Court determined that donning and doffing gear is a "principal activity" under the Portal to Portal Act, 29 U.S.C. 254, and thus time spent in those activities, as well as any walking and waiting time that occurs after the employee engages in his first principal activity and before he finishes his last principal activity, is part of a "continuous workday" and is compensable under the Fair Labor Standards Act (FLSA), 29 U.S.C. 201 et seq.

Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006), available at *https://www.dol.gov/whd/FieldBulletins/AdvisoryMemo2006_2.htm#_ftnref2* (footnote omitted).

## G.    Defendant's Regular Rate Violations

73.    Defendant paid Plaintiffs an hourly wage, plus shift premium pay.

74.    Under the FLSA, the "regular rate" at which an employee must be paid includes "**all remuneration** for employment paid to, or on behalf of, the employee," divided by hours worked in a workweek. 29 U.S.C. § 207(e) (emphasis added).

75.    Under the Massachusetts Overtime Act, "no employer in the commonwealth shall employ any of his employees in an occupation, as defined in section two, for a work week longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed."

M.G.L. ch. 151 §1A.

76.     The Massachusetts Administrative Code provides, "When an employee is paid on a piece work basis, salary, or any basis other than an hourly rate, the regularly hourly rate shall be determined by dividing the employee's total weekly earnings by the total hours worked during the week. Regardless of the basis used, an employee shall be paid not less than the applicable minimum wage each week. The regular hourly rate shall include **all remuneration** for employment paid to, or on behalf of, the employee." 454 Mass. Code Regs. 27.02 (emphasis added).

77.     Further, payments at issue in this were unlawfully not included in the regular rate calculation because the Massachusetts Overtime Act provides that "[s]ums paid as commissions, drawing accounts, bonuses, or other incentive pay based on sales or production, shall be excluded in computing the regular rate and the overtime rate of compensation under the provisions of this section." MGL ch. 151 §1A.

78.     Defendant violated the FLSA's overtime provisions, 29 U.S.C. § 207, and the Massachusetts Overtime Act, M.G.L. ch. 151 §1A, by systematically failing to include all remuneration, specifically shift premium pay, in Plaintiffs' regular rates of pay when computing overtime pay, specifically, shift premium pay.

79.     Consequently, Plaintiffs were paid at artificially low overtime rates.

## H.   Defendant Breached its Contractual Obligation to Pay Plaintiffs their Regular Hourly Rates for Each Hour Worked

80.     In approximately June 2018, Defendant offered Plaintiff the opportunity to work for Defendant as an hourly production employee.

81.     In consideration for Plaintiff's work as an hourly production employee, Defendant promised to pay Plaintiff an hourly wage for each hour he worked for Defendant.

82.     In approximately June 2018, Plaintiff accepted Defendant's offer of employment

and began working for Defendant, creating a valid contract between Defendant and Plaintiff whereby Defendant was obligated to pay Plaintiff his regular hourly rate of pay for each hour that he worked for Defendant, including the donning and walking activities described herein.

83.     Additionally, pursuant to this contract, Defendant was obligated to pay Plaintiff his proper overtime rate for all hours worked over 40 hours in a workweek.

84.     Throughout his employment with Defendant as an hourly production employee, Plaintiff performed all of the work required by Defendant, including the donning and walking described herein. Plaintiff also regularly worked over 40 hours in a workweek, entitling him to overtime pay. In performing this work, Plaintiff fulfilled all of his duties under the contract.

85.     However, throughout Plaintiff's entire employment with Defendant, Defendant repeatedly and systematically breached the contract by not paying Plaintiff his regular hourly rate of pay for the donning and walking activities described herein, as well as failing to pay Plaintiff his proper overtime rate.

86.     Defendant's failure to pay Plaintiff for each hour of work he performed and that was required of him as an hourly production employee, was a material breach by Defendant of the parties' contract.

87.     Because of Defendant's breaches, Plaintiff was deprived of wages owed to him under the contract, including unpaid "gap time" wages.[9]

88.     Upon information and belief, all of the other hourly production employees ("Plaintiffs") who worked for Defendant had a similar valid contract with Defendant.

---

[9] "Gap time" refers to time that is not covered by the FLSA's overtime provisions because it does not exceed the overtime limit, and to time that is not covered by the FLSA's minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their weekly wages are averaged across their actual time worked.

89.    Upon information and belief, Defendant repeatedly and systematically breached its contracts with all the Plaintiffs it employed in the same way that it breached its contract with Plaintiff.

90.    Defendant's contractual promises to pay Plaintiffs their applicable hourly rate for each hour worked is evidenced by, among other things, each earnings statement issued to the Plaintiffs.

91.    Plaintiffs are owed wages at their contractual hourly wage rates for the time that they worked off the clock during their employment with Defendant, including unpaid "gap time" wages.

92.    Plaintiffs earned these wages at the moment they performed the off-the-clock work, and the wages were due to be paid to Plaintiffs no later than the pay day for the period in which the off-the-clock work was performed.

93.    Despite the fact that Plaintiffs performed the off-the-clock work before and after their scheduled shifts, these off-the-clock hours were not peripheral tasks for which they were owed additional compensation. Instead, the off-the-clock work, performed by Plaintiffs pursuant to Defendant's express instructions, constituted principal work activities that are integral and indispensable to the hourly production employees' work; and Defendant was contractually obligated to pay Plaintiffs for this time at the regular hourly rates at which they were employed.

94.    The fact that Defendant deliberately chose not to compensate Plaintiffs for this work, and that the off-the-clock work was performed before Plaintiffs' scheduled shifts, does not somehow relieve Defendant of its contractual obligations to pay the Plaintiffs for this time.

95.    Defendant was contractually obligated to pay Plaintiffs their regular rates of pay for *all hours worked*, including hours worked before after their scheduled work shifts, because that

is what the parties agreed to in their contract.

## I.   **Defendant Benefitted from the Unpaid Donning and Walking Activities**

96.   At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiffs in connection with the above-described pre-shift donning and walking activities and was aware it was occurring off the clock and without compensation.

97.   Plaintiffs' pre-shift donning and walking conferred a benefit on Defendant in that they were ready to work in the required PPE at the beginning of their shift and that Defendant saved the funds it would have spent had it paid Plaintiffs for that work.

98.   At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiffs.

99.   At all relevant times, Defendant was able to track the amount of time Plaintiffs spent in connection with the pre-shift donning and walking activities. However, Defendant failed to do so and failed to pay Plaintiffs for all of the work they performed.

100.   At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs in order to pressure them into performing the pre-shift donning and walking activities without pay.

101.   Defendant expressly trained and instructed Plaintiffs to begin performing the above-described pre-shift donning and walking activities *before* the start of their scheduled shifts, to ensure they were prepared to engage in their production activities prior to the start of their shifts.

102.   At all relevant times, Defendant's policies and practices deprived Plaintiffs of wages owed for the pre-shift donning and walking activities they performed. Because Plaintiffs regularly worked 40 hours or more per week, Defendant's policies and practices also deprived them of overtime pay.

103.   Defendant knew or should have known that the time spent by Plaintiffs in

connection with the pre-shift donning and walking activities was compensable under the law. Indeed, in light of the explicit DOL guidance and Supreme Court case law cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

104.    Despite knowing Plaintiffs performed work before their scheduled work shifts, Defendant failed to make any effort to stop or disallow the pre-shift work and instead suffered and permitted it to happen.

105.    Depending on when the uncompensated work was performed, unpaid wages related to the pre-shift work described herein are owed to Plaintiffs at the FLSA mandated overtime premium or at their standard rate of pay.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

106.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on his own behalf and on behalf of:

> ***All current and former production employees who worked for Ocean Spray Cranberries, Inc. at any of its manufacturing facilities during the last three years.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

107.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated production employees.

108.    Excluded from the proposed FLSA Collective are Defendant's executives and administrative and professional employees, including computer professionals and outside salespersons.

109.    Consistent with Defendant's policy and pattern or practice, Plaintiff and the FLSA Collective were not paid premium overtime compensation for all hours worked over 40 in a workweek.

110.    Defendant assigned and/or was aware of all of the work that Plaintiff and the FLSA Collective performed.

111.    As part of their regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

      a.    Willfully failing to pay their employees, including Plaintiff and the FLSA Collective, premium overtime wages for all hours worked in excess of 40 hours per workweek; and

      b.    Willfully failing to record all of the time that their employees, including Plaintiff and the FLSA Collective, worked for the benefit of Defendant; and

      c.    Willfully failing to include required remuneration in Plaintiffs' regular rates of pay when computing overtime pay, specifically, shift premium pay.

112.    Defendant is aware or should have been aware that federal law required them to pay Plaintiff and the FLSA Collective overtime premiums for all hours worked in excess of 40 per workweek and at rates whose calculation included shift premium pay.

113.    Defendant's unlawful conduct has been widespread, repeated, and consistent.

114.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

115.    The employment relationships between Defendant and every proposed FLSA Collective member is the same. The key issues - the amount of uncompensated pre-shift donning and walking time - do not vary substantially among the proposed FLSA Collective members.

116.    Many similarly situated current and former production employees have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

117.    Court-supervised notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

118.    Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

119.    Plaintiff estimates the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds of workers. The precise number of FLSA Collective members should be readily ascertainable from a review of Defendant' personnel and payroll records.

<u>**RULE 23 MASSACHUSETTS CLASS ACTION ALLEGATIONS**</u>

120.    Plaintiff Desmarais brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of:

>   ***All current and former production employees who worked for Ocean Spray Cranberries, Inc. at any of its manufacturing facilities during the applicable statute of limitations period in Massachusetts.***

(hereinafter referred to as the "Rule 23 Massachusetts Class"). Plaintiff Desmarais reserves the right to amend the putative class definition if necessary.

121.    The members of the Rule 23 Massachusetts Class are so numerous that joinder of all Rule 23 Massachusetts Class members in this case would be impractical. Plaintiff Desmarais reasonably estimates there are dozens, if not hundreds, of Rule 23 Massachusetts Class members. Rule 23 Massachusetts Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

122.    There is a well-defined community of interest among Rule 23 Massachusetts Class

members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Massachusetts Class. These common legal and factual questions include, but are not limited to, the following:

> a.  Whether the time Rule 23 Massachusetts Class members spent on pre-shift activities prior to clocking in for each shift is compensable time;

> b.  Whether Rule 23 Massachusetts Class members are owed wages for time spent performing off-the-clock work activities, and, if so, the appropriate amount thereof;

> c.  Whether Defendant failed to include all remuneration in Rule 23 Massachusetts Class members' regular rates of pay when computing overtime pay, specifically, shift premium pay.

123.    Plaintiff Desmarais's claims are typical of those of the Rule 23 Massachusetts Class in that he and all other Rule 23 Massachusetts Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff Desmarais's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Massachusetts Class members' claims, and his legal theories are based on the same legal theories as all other Rule 23 Massachusetts Class members.

124.    Plaintiff Desmarais will fully and adequately protect the interests of the Rule 23 Massachusetts Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff Desmarais nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Massachusetts Class.

125.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Massachusetts Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of

duplicative lawsuits being filed in state and federal courts throughout the nation.

126.    This case will be manageable as a Rule 23 Class action. Plaintiff Desmarais and his counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

127.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

128.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Massachusetts Class and declaratory relief is appropriate in this case with respect to the Rule 23 Massachusetts Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

129.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of:

> **All current and former production employees who worked for Ocean Spray Cranberries, Inc. at any of its manufacturing facilities during the applicable statute of limitations period.**

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

130.    The Rule 23 Nationwide Class members are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and

personnel records.

131.    There is a well-defined community of interest among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

      a.    Whether the time Rule 23 Nationwide Class members spent on pre-shift donning and walking activities is compensable time;

      b.    Whether Rule 23 Nationwide Class members are owed wages for time spent performing pre-shift donning and walking activities, and if so, the appropriate amount thereof; and

      c.    Whether Defendant's non-payment of wages for all compensable time constitutes breach of contract or unjust enrichment.

132.    Plaintiff's claims are typical of the Rule 23 Nationwide Class members' claims because Plaintiff and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims, and his legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

133.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

134.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

135.    This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

136.    Because the elements of Fed. R. Civ. P. 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A.*, 559 U.S. at 398 ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

137.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification under Fed. R. Civ. P. 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATION OF FLSA, 29 U.S.C. § 201 *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**
**(29 U.S.C. § 216(b) Collective Action)**

138.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

139.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

140.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

141.    Plaintiff and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

142.    Plaintiff and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

143.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

144.    At all times relevant to this action, Defendant required Plaintiff and the FLSA Collective to perform unpaid off-the-clock work in connection with their donning and walking activities, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

145.    The off-the-clock work performed every shift by Plaintiff and the FLSA Collective is an essential part of their jobs, and these activities and the time associated with these activities are not *de minimis*.

146.    In workweeks where Plaintiff and other FLSA Collective members worked over 40 hours, Defendant failed to compensate Plaintiff and the FLSA Collective members for the unpaid off-the-clock work time, and all other overtime, at the federally mandated rate of one and one-half times each employee's regular hourly wage, including shift differential pay, nondiscretionary incentive pay, and all other non-excludable remuneration. 29 U.S.C. § 207.

147.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes Plaintiffs to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly paid Plaintiff and the FLSA Collective for these work activities, but deliberately chose not to.

148.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act,

an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

### COUNT II
### (On Behalf of the Rule 23 Massachusetts Class)
### M.G.L. ch. 151 §1A (MASSACHUSETTS OVERTIME ACT)

149.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

150.    Defendant was an "employer" of Plaintiff Desmarais and the members of the Rule 23 Massachusetts Class who worked at its Massachusetts facilities as that term is used in the Massachusetts Overtime Act (the "Massachusetts Employees"). Defendant failed to pay overtime for all hours worked over 40 in a workweek to Plaintiff Desmarais and the Massachusetts Employees in violation of the Massachusetts Overtime Act.

151.    In workweeks where Plaintiff and the Massachusetts Employees worked over 40 hours and received a shift premium, Defendant violated Massachusetts law by not including all remuneration, including shift premiums, when calculating overtime rates.  MGL ch. 151 §1A; 454 Mass. Code Regs. 27.02.

152.    Due to Defendant's violation of the Massachusetts Overtime Act, Plaintiff Desmarais and the Massachusetts Employees have incurred harm and loss and are entitled to recover from Defendant unpaid overtime mandatorily trebled, reasonable fees, costs of the action, and pre- and post-judgment interest.

### COUNT III
### (On Behalf of the Rule 23 Massachusetts Class)
### M.G.L. ch. 149 §148 (MASSACHUSETTS WAGE ACT)

153.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

154.    Defendant was an employer of Plaintiff Desmarais and the members of the Rule 23 Massachusetts Class who worked at its Massachusetts facilities as that term is used in the Massachusetts Wage Act (the "Massachusetts Employees").

155.    Defendant failed to pay wages for all hours worked in a workweek, and at the required rates, to Plaintiff Desmarais and the Massachusetts Employees in violation of the Massachusetts Wage Act.

156.    Due to Defendant's violation of the Massachusetts Wage Act, Plaintiff Desmarais and the Massachusetts Employees have incurred harm and loss and are entitled to recover from Desmarais unpaid overtime mandatorily trebled, reasonable fees, costs of the action, and pre- and post-judgment interest.

**COUNT IV**
**BREACH OF CONTRACT**
**(On Behalf of the Rule 23 Nationwide Class)**

157.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

158.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on Defendant's behalf.

159.    Defendant's contractual promises to pay Plaintiff and each Rule 23 Nationwide Class member's applicable hourly rate is evidenced by, among other things, each earnings statement issued to Plaintiff and the Rule 23 Nationwide Class members.

160.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift, including the unpaid off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with the donning and walking activities described herein.

161.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-

clock work they performed, Defendant systematically breached its contracts with Plaintiff and each Rule 23 Nationwide Class member.

162. Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

163. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members have been damaged in an amount to be determined at trial.

### COUNT V
### UNJUST ENRICHMENT
### (On Behalf of the Rule 23 Nationwide Class)

164. Plaintiff re-alleges and incorporates all previous paragraphs herein.

165. This Count is pled in the alternative to Count IV, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

166. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

167. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

168. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

169. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of, without objection by, and for the benefit of, Defendant, and conferred a

benefit on Defendant by doing so.

170.    Defendant appreciated, was aware of, received, and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom, including increased profits, without having paid for the same.

171.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

172.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having paid Plaintiff and the Rule 23 Nationwide Class for the same.

173.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to pay them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

174.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on his own behalf and on behalf of the putative FLSA Collective and Rule 23 Classes, requests judgment as follows:

a.    Certifying this case as a collective action under 29 U.S.C. § 216(b) with respect to Plaintiff's FLSA claim (Count I);

b.    Certifying this action as a class action (for the Rule 23 Massachusetts Class) under Fed. R. Civ. P. 23(b)(2) and (b)(3) with respect to Plaintiff's Massachusetts state law claims (Counts II-III);

c.  Certifying this action as a class action (for the Rule 23 Nationwide Class) under Fed. R. Civ. P. 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts IV-V);

d.  Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, email addresses, phone numbers and dates and location of employment of all FLSA Collective members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, apprising the FLSA Collective members of their rights by law to join and participate in this lawsuit;

e.  Designating Plaintiff as the representative of the FLSA Collective and the Rule 23 Classes, and undersigned counsel as Class counsel for the same;

f.  Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

g.  Declaring Defendant's violations of the FLSA were willful;

h.  Declaring Defendant violated the Massachusetts Overtime Act and the Massachusetts Wage Act;

i.  Declaring Defendant's violations of the Massachusetts Overtime Act and the Massachusetts Wage Act were willful;

j.  Declaring Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class members (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

k.  Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective and the Rule 23 Classes the full amount of damages and liquidated damages available by law;

l.  Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

m.  Awarding pre- and post-judgment interest to Plaintiff on these damages; and

n.  Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demands a trial by jury under Fed. R. Civ. P. 38.

Dated:  November 9, 2022                    Respectfully Submitted,


_Benjamin Knox Steffans (BBO#568535)_
Steffans Legal PLLC
10 Wendell Ave. Ext. Ste 208
Pittsfield, MA 01201
413-418-4176
bsteffans@steffanslegal.com


_/s/ Kevin J. Stoops_
Kevin J. Stoops (P64371)*
Jesse L. Young (P72614)*
Albert J. Asciutto (P82822)*
Sommers Schwartz, P.C.
One Towne Square
17th Floor
Southfield, Michigan 48076
(248) 355-0300
kstoops@sommerspc.com
jyoung@sommerspc.com
aasciutto@sommerspc.com
*pro hac vice motions forthcoming

*Attorneys for Plaintiff and the Putative
Collective/Class Members*