UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| HENRY DESMARAIS, *individually and on behalf of all other persons similarly situated*, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 22-cv-11904-ADB |
| OCEAN SPRAY CRANBERRIES, INC., | * * * | |
| Defendant. | * * | |

**<u>MEMORANDUM AND ORDER</u>**

BURROUGHS, D.J.

Currently pending before the Court is Plaintiff Henry Desmarais's motion for conditional certification of a collective action and Court-authorized notice under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* [ECF No. 15]. Plaintiff alleges that Ocean Spray Cranberries, Inc. ("Ocean Spray" or "Defendant") has (1) failed to compensate necessary pre-shift work, including changing into personal protective equipment ("PPE"), and (2) failed to properly calculate regular rates of pay for overtime purposes. See [ECF No. 1 ("Complaint" or "Compl.")]. He proposes certification of a class consisting of "[a]ll current and former production employees who worked for Ocean Spray Cranberries, Inc. at . . . its [four] manufacturing facilities [where PPE is "captive"] during the last three years" ("Proposed Collective"). [Id. at 20; ECF No. 15 at 1; ECF No. 20 at 2–3].[1] For the reasons discussed below, Plaintiff's motion, [ECF No. 15], is <u>GRANTED</u> in part and <u>DENIED</u> in part.

---

[1] PPE is considered "captive," at four of Defendant's eight manufacturing facilities; meaning that "shirts, pants, boots, and other PPE always stay at the facility." [ECF No. 17 at 7 (citing ECF No. 17-2 ¶ 3 (Middleboro); ECF No. 17-8 ¶ 3 (Markham); ECF No. 17-9 ¶ 3 (Tomah); ECF No.

The standard for whether to grant conditional certification is "fairly lenient" but "not invisible." Burns v. City of Holyoke, 881 F. Supp. 2d 232, 234 (D. Mass. 2012) (citation and internal quotation marks omitted). "[P]laintiffs have 'the burden of showing a reasonable basis for [their] claim that there are other similarly situated employees." Klapatch v. BHI Energy I Power Servs., LLC, No. 18-cv-11581, 2019 WL 859044, at *1 (D. Mass. Feb. 22, 2019) (quoting Prescott v. Prudential Ins. Co., 729 F. Supp. 2d 357, 364 (D. Me. 2010)). In other words, Plaintiff must "put forth some evidence," Trezvant v. Fidelity Emp. Servs. Corp., 434 F. Supp. 2d 40, 44 (D. Mass. 2006), that shows "that [he] and other employees, with similar but not necessarily identical jobs, suffered from a common unlawful policy or plan," Klapatch, 2019 WL 859044, at *1 (quoting Prescott, 729 F. Supp. 2d at 364).

With regards to Plaintiff's pre-shift work claim, Plaintiff, through declaration and other evidence, provides relevant information concerning the Middleboro facility where Plaintiff worked, including: (1) tasks that employees had to complete prior to their shifts, including having their temperature taken and changing into PPE, and the time that took (eight to ten minutes), and (2) Middleboro's compensation policy related to pre-shift work. See, e.g., [ECF No. 16-4]. Plaintiff, however, provides no such information about other facilities. Although Plaintiff's declaration includes a general assertion that he "had multiple conversations with other production employees across various job titles about Ocean Spray's compensation policies . . .

---

17-3 ¶ 3 (Wisconsin Rapids))]. The facility where Plaintiff worked, Middleboro, is one of these four "captive" facilities. [ECF No. 17 at 7 (citing ECF No. 17-2 ¶ 3)]. At the four other facilities, PPE is not "captive," meaning that employees are permitted to change into and out of PPE at home, rather than changing at work. [ECF No. 17 at 7 (citing ECF No. 17-6 ¶ 3 (Henderson); ECF No. 17-7 ¶ 3 (Kenosha); ECF No. 17-4 ¶ 3 (Lehigh Valley); ECF No. 17-5 ¶ 3 (Sulphur))]. Although Plaintiff originally sought conditional certification of a collective action consisting of employees from all of Defendant's eight manufacturing facilities, in reply, Plaintiff limited his request to employees at the four facilities where PPE is "captive." [ECF No. 20 at 2–3].

and its failure to pay production employees for all work performed," [id. ¶ 36], it is not even evident whether those employees worked at Middleboro or one of the other facilities.  Likewise, Plaintiff has proffered job postings for various positions at Middleboro and the other facilities to demonstrate that there are similar job duties across positions, but these postings provide no information about compensation policies for pre-work activities.  See [ECF No. 16-5].  The Court does not agree that Plaintiff need only present evidence that his "job position[] and duties are similar to those positions held by the putative class members."  [ECF No. 16 at 18].  As this Court has held previously, see Ortiz-Patino v. Kamcor, Inc., No. 17-cv-12400, 2018 WL 2170324, at *1 (D. Mass. May 10, 2018), "[f]or a class to extend beyond the named plaintiffs' own work location, they must demonstrate that employees outside of the work location for which [they] ha[ve] provided evidence were similarly affected by the employer's policies," Travers v. JetBlue Airways Corp., No. 08-cv-10730, 2010 WL 3835029, at *2 (D. Mass. Sept. 30, 2010) (internal quotation marks and citation omitted).  A plaintiff "need not 'demonstrate the existence of similarly situated persons at every location in the proposed class,' but 'must demonstrate that there existed at least one similarly situated person at a facility other than [their] own.'"  Id. (quoting Adams v. Inter-Con Sec. Sys., Inc., 242 F.R.D. 530, 537 (N.D. Cal. 2007)); see also Davine v. Golub Corp., No. 14-cv-30136, 2015 WL 1387922, at *2 (D. Mass. Mar. 25, 2015) (quoting Travers, 2010 WL 3835029, at *2); Perez v. Prime Steak House Rest. Corp., 959 F. Supp. 2d 227, 231 (D.P.R. 2013) (same).  Plaintiff's evidence fails to meet this low threshold.

      Plaintiff's argument in reply, that Defendant's evidence actually supports that there is a common, unlawful policy across the four captive facilities, is unavailing.  Plaintiff characterizes Defendant's evidence as showing that, at the four captive facilities, "Defendant requires Production Employees to don and doff[, that is, change into and out of] . . . PPE prior to and after

their shifts[,]" and "Defendant does not pay for all of Production Employees' donning and doffing time. Instead, Defendant pays Plaintiff and all others similarly situated based on their *scheduled* shift start times and end times (e.g. 6:00 p.m. to 6:00 a.m.), not the time that they performed their first and last principal activities of the workday . . . ." [ECF No. 20 at 3 (emphasis in original) (citing Defendant declarations)]. According to Plaintiff, Defendant's evidence shows that employees are paid "for some of the time spent donning and doffing (up to 7.5 minutes before each shift, dependent upon location)," but Plaintiff maintains that because "the donning and doffing process takes substantial time on a daily basis, ranging from [eight to ten] minutes per shift," this shows that Defendant still underpays employees. [Id. at 3 n.3].[2]

The Court finds that Defendant's evidence suggests that at the three captive facilities other than Middleboro, employees are paid for an additional 15 minutes (to account for pre- and post-shift work). That said, there is no evidence of how long pre-shift work takes at other facilities (from Plaintiff or Defendant), and even assuming it similarly takes eight to ten minutes, Plaintiff has still provided no information on how long post-shift doffing or other required post-shift work takes. An additional 15 paid minutes could suffice to cover pre- and post-shift work. Fairly read, Defendant's evidence merely shows that each facility has an individual policy that

---

[2] The Court also finds that Plaintiff has mischaracterized Defendant's evidence as contending that it pays employees "based on their scheduled shift start times and end times." First, as to Middleboro, Defendant says that, per a March 2020 policy that remains in effect, employees may arrive more than seven minutes early for their scheduled shift times, "punch in upon arrival," before donning PPE, and "are paid from punch to punch, not merely according to the scheduled shift times." [ECF No. 17-2 ¶¶ 5–6]. As to the other three captive facilities, Defendant contends that at Markman, employees clock in before changing into their PPE and after changing out of their PPE, and are paid for an additional 7.5 minutes before and after their shifts, for a total of 15 additional paid minutes per shift, [ECF No. 17-8 ¶ 4 & 13]; and at Tomah and Wisconsin Rapids, employees change into PPE before clocking in and change out of PPE after clocking out, but are also paid for an additional 15 minutes per shift, beyond the time "recorded by their punches," [ECF No. 17-9 ¶ 4; ECF No. 17-3 ¶ 4].

4

compensates employees for pre- and post-shift work. As such, the Court does not find that this evidence provides even the required "modest factual showing" that Plaintiff and "other employees" at the other three captive facilities, "with similar but not necessarily identical jobs, suffered from a common unlawful policy or plan." Klapatch, 2019 WL 859044, at *1.

On the other hand, the Court finds that there is sufficient evidence to grant conditional certification as to Plaintiff's claim that Defendant improperly calculated overtime compensation by excluding shift premium compensation and non-discretionary bonuses, including the "Pay for Performance" ("PFP") bonus.[3] Although Plaintiff has not presented any evidence of overtime compensation policies at facilities other than Middleboro, Defendant concedes that it maintains a uniform policy across all facilities. See [ECF No. 17 at 19 ("Ocean Spray's practice with respect to regular-rate calculations may be uniform, but – certainly on this record – that uniform policy follows the law."); id. at 9 ("Ocean Spray's practice is more uniform with respect to this claim.")]. Defendant nonetheless argues that Plaintiff has failed to present any evidence that this uniform policy is unlawful, because (1) Plaintiff's pay stubs, [ECF Nos. 16-6, 16-7], show that

---

[3] Defendant asserts that, as alleged in the Complaint, Plaintiff's claim was limited to the omission of shift premiums from this calculation, and that the claim related to omitting the PFP bonus was only added in his briefing on this Motion. See [ECF No. 17 at 9]. The Complaint alleges that Defendant violated the FLSA and the Massachusetts Overtime Act, Mass. Gen. Laws ch. 151, § 1A, by "fail[ing] to include shift premiums, *bonuses*, or other remuneration paid to its production employees in calculating their correct overtime premiums," [Compl. ¶ 16 (emphasis added)], and violated the FLSA by failing to include "shift differential pay, *nondiscretionary incentive pay*, and all other non-excludable remuneration," [id. ¶ 146 (emphasis added)]. Nevertheless, other allegations suggest that Plaintiff's FLSA claim is limited to failure to include "shift premium pay." See, e.g., [Compl. ¶ 78 ("Defendant violated the FLSA's overtime provisions, 29 U.S.C. § 207, and the Massachusetts Overtime Act, [Mass. Gen. Laws ch. 151, § 1A], by systematically failing to include all remuneration, specifically shift premium pay, in Plaintiffs' regular rates of pay when computing overtime pay, specifically, shift premium pay.")]. Despite this ambiguous pleading, at this early stage, the Court will consider Plaintiff's claim as related to both shift premiums and the PFP bonus (particularly where it is not clear whether Defendant is requesting that the Court do otherwise).

his shift premiums were included in calculating his overtime pay rates and (2) "bonuses calculated as a percentage of earnings, including overtime earnings [like the PFP Bonus], 'will satisfy in full the overtime provisions of the [FLSA] and no recomputation [of the regular rate] will be required,'" [ECF No. 17 at 18 (citing 29 C.F.R. § 778.210) (alterations in original)].  The Court finds that these are merits arguments and therefore premature at this early stage.  See, e.g., Montoya v. CRST Expedited, Inc., 311 F. Supp. 3d 411, 420 (D. Mass. 2018) ("The focus of this inquiry . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." (quoting Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005))); Pugliese v. Gov't Emps. Ins. Co., No. 21-cv-11629, 2022 WL 1129341, at *3 (D. Mass. Apr. 15, 2022) ("[C]ourts generally do not consider merits questions when deciding whether to conditionally certify an FLSA collective action group." (quoting Romero v. Clean Harbors Surface Rentals USA, Inc., 368 F. Supp. 3d 152, 162 (D. Mass. 2019))); Mejias v. Banco Popular de P.R., 86 F. Supp. 3d 84, 87 (D.P.R. 2015) ("[A]t this early stage of the litigation, the Court does not [make] credibility determinations or reach the merits of plaintiffs' claims.").

      Accordingly, Plaintiff's motion for conditional certification is GRANTED as to Plaintiff's overtime compensation claim and DENIED as to Plaintiff's pre-shift work claim, with leave to renew if Plaintiff is able to show that there are similarly situated employees at other facilities.  Cf. Chetwood v. T-Mobile USA, Inc., No. 19-cv-00458, 2020 WL 1689730, at *5 (W.D. Wash. Apr. 7, 2020) (granting motion for conditional certification as to only one of two claims).

Plaintiff's motion for approval of notice procedures is <u>DENIED</u>, to give the parties the opportunity to meet and confer, as Defendant requested, [ECF No. 17 at 20].

**SO ORDERED.**

August 18, 2023                                                          /s/ Allison D. Burroughs
                                                                         ALLISON D. BURROUGHS
                                                                         U.S. DISTRICT JUDGE