UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HENRY DESMARAIS, *individually and on behalf of all other persons similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>OCEAN SPRAY CRANBERRIES, INC.,<br><br>Defendant. | * * * * * * * * * * * * | Civil Action No. 22-cv-11904-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Before the Court is Plaintiff Henry Desmarais's ("Desmarais") unopposed motion for approval of the parties' FLSA collective action settlement, as well as approval of the attorneys' fees awarded therein. [ECF No. 86]. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**, as described below.

## I. BACKGROUND

Desmarais commenced this action on November 10, 2022, alleging that Defendant Ocean Spray Cranberries, Inc. ("Defendant") underpaid him and other similarly situated employees by (1) miscalculating their overtime pay and (2) failing to properly count time they spent donning and doffing personal protective equipment at Defendant's production facility toward their hours worked. [ECF No. 1]. He sought to represent an FLSA collective under 29 U.S.C. § 216(b), as well as both Massachusetts and nationwide classes of similarly situated workers under Federal Rule of Civil Procedure 23. [Id.].

On October 18, 2023, the Court granted conditional certification of an FLSA collective as

to the overtime miscalculation claim, [ECF No. 21], and later amended its conditional certification to encompass Plaintiff's claims regarding donning and doffing time, [ECF No. 43]. Following the Court's conditional certification orders, 179 individuals opted into the collective. [ECF No. 87-7 ¶ 21]. After the opt-ins occurred, the parties exchanged information, began to discuss settlement prospects, and ultimately reached a settlement agreement with respect to the claims of twenty-one opt-in Plaintiffs sometime in early 2026 (the "Settlement"). [ECF No. 87-7 ¶¶ 24–27]. They are now asking the Court to approve the Settlement.

Under the Settlement, Defendant would pay $100,000 dollars toward a common fund. [ECF No. 87-7 ¶ 38]. Of that fund, the parties propose allocating $28,279 among the twenty-one Plaintiffs who are participating in the Settlement (the "Participating Plaintiffs"). [Id.]. According to Plaintiffs' counsel, the twenty-one Participating Plaintiffs are the only individuals out of the 179 members of the collective whose claims are viable. [Id. ¶ 24]. Specifically, Plaintiffs' counsel attest that after exchanging information with Defendant, they now agree that Defendant properly calculated its employees' overtime pay, and that their claims for donning and doffing time are non-viable with respect to several of Defendant's facilities, leaving only twenty-one individuals with a path to recovery. [Id. ¶ 23]. Plaintiffs assert that the $28,279 allocated to the Participating Plaintiffs in the Settlement ($1,346 per person, on average) is equivalent to compensation for three minutes per Plaintiff per shift of donning and doffing time during the damages period, plus liquidated damages. [Id. ¶ 39].

Of the money remaining in the $100,000 common fund, the Settlement proposes allocating $66,721 to paying attorneys' fees and litigation expenses, with $55,107 of that going to attorneys' fees and $11,614 going to expenses. [ECF No. 87 at 20]; [ECF No. 87-7 ¶ 38]. Plaintiffs' counsel attest that they have collectively dedicated 335.47 hours to this case, which at

their standard hourly rates (ranging from $225 to $975) results in a lodestar calculation of $165,531. [ECF No. 87-7 ¶¶ 47–48]. Thus, their requested attorneys' fees are approximately one third of their lodestar. In addition, the Settlement would allocate $2,500 for a service award to Desmarais, the Named Plaintiff, and $2,500 for settlement administration fees. [Id. ¶ 38].

In exchange for the payment of $100,000 into the common fund, the Settlement would permanently release the claims of the Participating Plaintiffs. [ECF No. 87-2]. It would not release the claims of the other 158 non-participating Plaintiffs, [id.], but Plaintiffs request that the Court dismiss the non-participating Plaintiffs' claims without prejudice in conjunction with approving the Settlement, [ECF No. 87 at 23].

## II. DISCUSSION

"The private settlement of FLSA claims requires the approval of either the Department of Labor or the district court." Hamel v. Wheatleigh Corp., No. 18-cv-30113, 2024 WL 1659735, at *1 (D. Mass. Apr. 16, 2024) (quoting Singleton v. AT&T Mobility Servs., LLC, 146 F. Supp. 3d 258, 260 (D. Mass. 2015)). In determining whether to approve a proposed settlement, courts consider "the totality of the circumstances," which may include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

Id. (quoting Singleton, 146 F. Supp. 3d at 260–61). Moreover, "if the proposed settlement includes the payment of attorneys' fees, the court is required to assess the reasonableness of the fee award." Id. (quoting Singleton, 146 F. Supp. 3d at 260).

### A. Reasonableness of Settlement

After reviewing Plaintiffs' motion and the relevant documents, the Court finds that the Settlement "represents 'a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" Hamel, 2024 WL 1659735, at *1 (quoting Singleton, 146 F. Supp. 3d at 260).

Viewing the $100,000 settlement fund in gross and considering the range of possible recovery, the Court concludes that it values the Participating Plaintiffs' claims appropriately. According to Plaintiffs' counsel, an allocation of approximately $28,000 to the Participating Plaintiffs would be equivalent to compensation for approximately three minutes of donning and doffing time per Plaintiff per shift during the recovery period, plus liquidated damages. [ECF No. 87-7 ¶ 39]. Thus, by extension, the Court infers that the $100,000 fund is equivalent to at least ten minutes of donning and doffing time per shift. That amount is substantially in line with the actual per-shift donning and doffing time—eight to ten minutes—recounted by Desmarais in his declaration submitted earlier in this case. See [ECF No. 37-4 ¶ 12]. Accordingly, it appears that the Settlement, before deductions for attorneys' fees and other costs, provides approximately full recovery to the Participating Plaintiffs on their donning-and-doffing claims, if not more.

Considering the totality of the circumstances, including the risk and further expenses Plaintiffs face from continuing to litigate this action, the Court finds that a $100,000 settlement fund allocated among the Participating Plaintiffs is reasonable.[1]

[1] Although the 158 non-participating Plaintiffs receive no compensation under this settlement, their claims are not released under the settlement, [ECF No. 87-2 at 4], so they are not relevant to the Court's reasonableness determination. Any non-participating Plaintiff who wishes to do so may continue pursuing these claims in a separate action.

**B. Reasonableness of Attorneys' Fees and Costs**

Although the Court finds that the $100,000 fund provided by the Settlement is reasonable, it finds that the portion of that fund proposed to be allocated to attorneys' fees is excessive, particularly when compared to the amounts being recovered by the participating plaintiffs.

Where, as here, counsel seek fees from a common fund obtained on behalf of a collective, courts "recognize[] two methods of calculating appropriate attorney fees." Mongue v. Wheatleigh Corp., 165 F.4th 49, 63 (1st Cir. 2026). These include (1) "the lodestar method, which involves 'determining the number of hours productively spent on the litigation and multiplying those hours by reasonable hourly rates,'" and (2) "the percentage of funds (POF) method, in which 'the court shapes the counsel fee based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation.'" Id. (quoting In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 305 (1st Cir. 1995)).

When determining a reasonable fee award, Courts frequently consider both methods and use them to "cross-check" each other. In re Ranbaxy Generic Drug Application Antitrust Litig., 630 F. Supp. 3d 241, 246 (D. Mass. 2022); see Conley v. Sears, Roebuck & Co., 222 B.R. 181, 187 (D. Mass. 1998) ("[C]ourts have the discretion to use a flexible approach in the combination of both methods."). Thus, "a court can use the lodestar method to confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate," and "the percentage of recovery method can be used to assure that counsel's fee does not dwarf class recovery." Conley, 222 B.R. at 187 (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 821, n.40 (3d Cir. 1995)).

In this case, the fees dictated by the two methods diverge sharply: although Plaintiffs' counsel seek only about one third of their lodestar calculation in fees, the amount they request still "dwarf[s] [the] class recovery," Conley, 222 B.R. at 187, and far exceeds the percentage of funds awards commonly approved by courts. "[S]tandard awards in the First Circuit range from 20% at the low end to 33% at the high end." Ranbaxy, 630 F. Supp. at 245; see also Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co., 527 F. Supp. 3d 40, 54 (D. Mass. 2021) ("[F]requently an appropriate award is found to be in the 20 to 30% range . . . ."). Here, by contrast, Plaintiffs' counsel are requesting approximately 55% of the total settlement fund in fees—roughly twice what Courts typically approve.

The Court does not find such a disproportionate fee award appropriate. Plaintiffs' counsel argue that the fees they would receive under the Settlement are only a fraction of the money they invested into this case, [ECF No. 87 at 20–21], but the Court rejects the assertion that counsel's lodestar should be determinative, given the recovery they obtained for the collective. Although the Court recognizes that counsel took on risk to litigate this case without guaranteed payment, the outcome here is exactly the risk they accepted when they did so: a situation where their investment in the action outstrips the ultimate success they achieve. Had this case resulted in a large recovery for the collective, Plaintiffs' counsel could have recovered fees that far exceeded their investment in the case. Because the results counsel achieved are comparatively modest, it is only fair that their fees remain commensurate.

The Court is cognizant, however, of an important countervailing consideration given the FLSA context of this case. As the First Circuit has explained, "a requirement that FLSA attorney fees be proportionate to recovery amounts would arguably be at odds with the statute's broad remedial purpose, by preventing low-wage workers from securing competent legal counsel."

Mongue, 165 F.4th at 64. This principle exists primarily to protect single-plaintiff "'run of the mill' FLSA cases where the potential damages are low," id. (quoting Fisher v. SD Prot. Inc., 948 F.3d 593, 603 (2d Cir. 2020), and has far less relevance to FLSA collective actions where the aggregate recovery can be, and often is, quite substantial. Nonetheless, the Court acknowledges that even in the collective action context, placing a hard proportionality limit on attorneys' fees could have a similar perverse effect of incentivizing attorneys to favor collectives of high earners over those of low-wage workers, particularly where, as here, the collectives are relatively small. Accordingly, the Court will give some weight to plaintiffs' counsel's lodestar.

Considering all these factors, the Court finds that a fee allocation of $40,000 from the common fund, along with the requested $11,614 in costs, is reasonable. Such a fee award, comprising 40% of the common fund, is still higher as a percentage of funds than those typically approved, but it at least does not "dwarf [the] class recovery" obtained in this case, Conley, 222 B.R. at 187. The Court finds that this higher-than-typical percentage of funds award is appropriate to protect counsel's incentives to represent lower-wage workers like those in this action, but also a caution to attorneys about spending significantly more on a case than is warranted by the likely recovery.[2]

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for approval of the parties' settlement and attorneys' fee allocation is **GRANTED IN PART** and **DENIED IN PART**. The Court orders as follows:

[2] The Court further finds that the proposed $2,500 service award to named Plaintiff Desmarais, and the $2,500 allocation of settlement administration fees, are both fair and reasonable. See, e.g., Carlson v. Target Enter., Inc., 447 F. Supp. 3d 1, 5 (D. Mass. 2020) (approving $7,500 service award to named plaintiff).

(1) The creation of a $100,000 settlement fund is approved;

(2) Plaintiffs' counsel are awarded $40,000 in attorneys' fees and $11,614 in costs, to be allocated from the settlement fund;

(3) $2,500 shall be allocated from the settlement fund for a service award to Named Plaintiff Henry Desmarais;

(4) $2,500 shall be allocated from the settlement fund for settlement administration expenses;

(5) The remainder of the settlement fund, after the deductions described above, shall be allocated among the twenty-one Participating Plaintiffs, see [ECF No. 87-5];

(6) All other terms of the Settlement Agreement and Release of Claims agreed to by the parties, [ECF No. 87-2], are approved to the extent they are consistent with this order;

(7) The Notice of Settlement, [ECF No. 87-4], is approved except to the extent it is inconsistent with this order. Plaintiffs shall revise the Notice of Settlement to be consistent with this order and distribute it to the Participating Plaintiffs;

(8) The claims of the twenty-one Participating Plaintiffs, see [ECF No. 87-5], are **DISMISSED** with prejudice;

(9) The claims of the 158 non-participating Plaintiffs, see [ECF No. 87-6], are **DISMISSED** without prejudice.

**SO ORDERED.**

October 29, 2026

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE